```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

WHEELER AND CLEVENGER OIL
COMPANY, a Kentucky Corporation

    Plaintiff

v.                                  CIVIL ACTION NO. 2:05-0933

KENNETH L. RUST and HURRICANE
SUNOCO AND SERVICE CENTER, INC.,
a West Virginia Corporation

    Defendants


## MEMORANDUM OPINION AND ORDER

Pending before the court is plaintiff's motion, filed January 9, 2006, seeking dismissal of defendants' counterclaim.

I.

According to the allegations in the verified complaint, plaintiff Wheeler and Clevenger Oil Company had the right of first refusal to purchase a Sunoco gasoline retail facility located in Hurricane, West Virginia. (Ver. Compl. at ¶¶ 7,8.) Plaintiff possessed this right pursuant to an October 21, 1998, dealer supply agreement it had entered into with Mr. and Mrs. Jim Black and Jack Black ("Black Family"), the owners of the facility at that time. (Id. at ¶ 8.) At some point prior to March 15,

1

2000, the Black family and defendant Kenneth L. Rust appear to have discussed the possibility of Rust purchasing the facility.

On March 15, 2000, plaintiff and defendants Kenneth L. Rust and Hurricane Sunoco and Service Center, Inc. ("Hurricane Sunoco") entered into a dealer supply agreement ("agreement").[1] (Id. at ¶ 1.)  The agreement provided, in part, that (1) plaintiff would relinquish its right of first refusal in consideration of the defendants' consent to enter into the agreement;[2] (2) plaintiff would supply and defendants would purchase a minimum of 125,000 gallons of gasoline and diesel fuels per month in minimum loads of 8,200 gallons for a term of fifteen years beginning on April 1, 2000; and (3) should defendants decide to sell or lease the premises, plaintiff was to be provided with the first right of refusal.  (Agreement §§ 1, 13, 17.)  The agreement also contained a provision limiting the

---

[1] Susan Rust, the wife of Kenneth Rust, was also a party to the agreement.

[2] Under the March 15, 2000, agreement plaintiff's relinquishment of the right of first refusal was conditioned upon the defendants taking title and possession of the facility.  It appears the sale of the facility to defendants was finalized on March 15, 2000, inasmuch as a Memorandum of Supply Agreement and First Right of Refusal to Purchase, dated March 15, 2000, and recorded in the Putnam County Clerk's office, represents that defendants had "purchased" the facility from the Black family as of that date.

time frame in which the parties could bring an action.  (Id. at §
7.)

Plaintiff's last fuel delivery under the agreement appears to have occurred on or about September 20, 2004, the date the last invoice was submitted to the defendants.  (Clevenger Aff. at ¶ 3.)  By letter dated October 7, 2005, defendants informed the plaintiff that they intended to sell the premises, but this sale was a sale of the premises only and did not encompass the sale of defendants' business as the defendants proposed to terminate their business operations.  (Ver. Compl. at ¶ 19.)

On November 23, 2005, plaintiff instituted this action in the Southern District of West Virginia noting that federal jurisdiction was proper inasmuch as the parties are diverse and the amount in controversy requirement is satisfied.  (Id. at ¶ 2.)  Plaintiff alleges that defendants (1) have failed to purchase the minimum 125,000 gallons of fuel as required by the agreement; (2) failed to pay plaintiff for fuel which they have received under the Agreement, and currently have an outstanding accounts receivable balance in the amount of $13,329.25, inclusive of finance charges; and (3) have sold and/or are in the process of selling their business, in violation of the agreement.

3

(Id. at ¶¶ 11-13.) Plaintiff further maintains that Kenneth Rust is the president and sole officer of Hurricane Sunoco and that there was a unity of interest between Rust and Hurricane Sunoco such that their "separate personalities . . . did not exist, and an inequitable result would occur if the acts of Rust are not treated as those of Hurricane Sunoco and vice versa." (Id. at ¶¶ 4-5.) Plaintiff seeks declaratory judgment, injunctive relief, and damages.

On December 20, 2005, defendants responded to the complaint asserting affirmative defenses and a counterclaim. In their counterclaim, defendants maintain in essence that plaintiff fraudulently charged defendants for larger quantities of fuel than were delivered as plaintiff consistently "shorted" defendants on fuel deliveries. (Defs.' Counterclaim at ¶ 3-5.) Defendants contend that they are entitled to recover compensatory and punitive damages, costs, and reasonable attorney fees.

In its motion to dismiss defendants' counterclaim, plaintiff insists that defendants' counterclaim is time-barred under the limitation provision in the agreement. In support of this argument, plaintiff has attached the affidavit of Mark Clevenger, its vice president. Plaintiff further maintains that defendants' allegations of fraud fail to satisfy the

4

particularity requirement of Federal Rule of Civil Procedure 9(b) and should therefore be dismissed. Defendants, upon the direction of the court, filed their response to plaintiff's motion to dismiss on April 3, 2006, to which plaintiff has replied. In its response, defendants assert, in terse fashion, that they are entitled to attorney fees for the defense of plaintiff's motion to dismiss.

II.

Generally, a court will not consider extrinsic materials beyond the pleadings when resolving a motion to dismiss; however, in this case, the court may consider the agreement when resolving the motion to dismiss inasmuch as it is attached to both the complaint and defendants' response to plaintiff's motion, is explicitly relied on by both parties, and its authenticity is not challenged. Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999). Nonetheless, resolution of plaintiff's motion also requires reference to the Clevenger affidavit, converting plaintiff's motion to dismiss into a motion for summary judgment. See Pueschel v. United States, 369 F.3d 345, 353 n. 3 (4th Cir. 2004). The court will treat the motion accordingly and need not provide defendants notice of its intent to treat the motion to dismiss as one for summary judgment

inasmuch as defendants, as evidenced by their response to the motion, do not contest the pertinent facts recited in the affidavit, nor have they requested additional discovery to more fully respond to the plaintiff's motion.  Moreover, our court of appeals has held that when a moving party attaches documents outside the pleadings to a motion to dismiss, the opposing party is on constructive notice under the Federal Rules of Civil Procedure that the motion to dismiss may be treated as a motion for summary judgment.  <u>Laughlin v. Metropolitan Wash. Airports Auth.</u>, 149 F.3d 253, 260-61 (4th Cir. 1998).  The court will, therefore, treat plaintiff's motion as one for summary judgment.

  A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a

verdict for the non-movant. Id. The moving party has the burden of showing there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); Id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-moving party. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

                              III.

A.  Limitation Provision

The court first addresses plaintiff's argument that defendants' counterclaim is barred by the limitation provision found in section 7 of the agreement. This provision reads in its entirety as follows

> LIMITATION OF ACTIONS: COMPANY [PLAINTIFF] AND
> DEALER [DEFENDANTS] do hereby mutually agree that
> no civil or equitable action under the provisions
> of any Federal or State Law by either party against
> the other shall be brought unless instituted within
> six (6) months of the date of the transaction upon
> which the action is based, except any unpaid
> accounts owed by DEALER [DEFENDANTS] to COMPANY
> [PLAINTIFF], and the violations and remedies of

>     Exclusivity of Purchase and any environmental
>     problems and liabilities of DEALER [DEFENDANTS].

(Agreement § 7.)  In support of its position that defendants' counterclaim should be dismissed under this provision, plaintiff references the affidavit of Mark Clevenger, in which he represents that the last invoice issued to defendants for fuel plaintiff had delivered was dated September 20, 2004, nearly fourteen months prior to the date defendants filed the counterclaim, and well beyond the six month deadline for such a claim.  Clevenger further states that no further fuel deliveries have been made since September 20, 2004.

      Defendants do not dispute plaintiff's representation that it made no fuel deliveries after September 20, 2004, nor do defendants argue that there are any factual circumstances present in this case which would toll the running of the limitation provision.  Instead, defendants argue, without citation to any law, that the limitation provision is inapplicable.  More specifically, defendants maintain that the limitation provision

>     [A]pplies only to an "action under the <u>provisions</u>
>     of any Federal or State Law". . . the
>     [c]ounterclaim is not filed pursuant to any
>     Federal or State Law.  It is simply a claim for
>     shorting the Defendant [sic] on deliveries of the
>     <u>very same</u> gasoline products which Plaintiff is
>     suing Defendant [sic] for allegedly not paying
>     for.  Quite obviously, Paragraph 7 was intended to
>     cover cases arising under federal or state

>  statutes, such as environmental laws or
>  dealer/distributor statutes.

(Defs.' Memo. in Resp. at 3.)(emphasis in original).  Defendants further maintain that

>  Paragraph 7 specifically excepts 'any unpaid
>  accounts owed by DEALER [Defendants] to COMPANY
>  [Plaintiff]', from the 6-months limitation.
>  Plaintiff alleged that defendants owe on unpaid
>  accounts for delivery of certain quantities of
>  gasoline products and defendants defend that they
>  do not owe on the unpaid accounts because those
>  quantities were not delivered to defendants.  One
>  is simply the other side of the coin.  Plaintiff
>  wrote the Agreement and presumably Plaintiff knows
>  what it says.

(Id. at 3-4.)

Defendants' argument that the limitation period does not apply to its counterclaim is simply without merit.  If defendants' counterclaim is not brought pursuant to a federal or state law, be it statutory or common law, then defendants simply have no basis for asserting the counterclaim.  Moreover, contrary to defendants' suggestion, application of the limitation provision is not restricted to actions arising only under federal or state statutes inasmuch as the limitation provision reads "any Federal or State Law" without any qualification of the word "law."  The unqualified term "law" encompasses both statutory and common law and the court declines plaintiff's invitation to read the word "statutory" into the limitation provision.  Accordingly,

9

the limitation provision is applicable to defendants' counterclaim.

Even though the limitation provision applies, it only operates to bar defendants' counterclaim for affirmative relief. Defendants may still proceed on the allegations in the counterclaim under a recoupment theory.

Recoupment refers to the defendant's right to reduce or eliminate a plaintiff's contractual claim, either because the plaintiff has not complied with some cross-obligation of the contract or because the plaintiff has violated some legal duty in the making or performance of that contract.  20 Am.Jur.2d Counterclaim, Recoupment, & Setoff § 5.  Recoupment is a doctrine of a defensive nature and a defendant may not seek affirmative relief under a theory of recoupment; rather, defendant may assert, only up to the amount of plaintiff's claim, the defendant's own claim arising out of the same transaction. Ballengee v. Whitlock, 74 S.E.2d 780, 784 (W.Va.  1953) (internal citations omitted). Moreover, a defense of recoupment is not barred by a limitations period.  Polis v. American Liberty Financial, Inc., 237 F. Supp.2d 681, 685 (S.D. W. Va. 2002); see also Ruppenthal v. State of Wyoming, 849 P.2d 1316, 1320 (Wyo. 1993) (permitting party to proceed with recoupment defense

despite its assertion subsequent to the running of the limitations period and noting that "[t]he purpose of limitation provisions is to bar actions and not suppress or deny matters of defense").

Here, plaintiff is asserting, among other things, that defendants failed to pay for fuel that plaintiff provided to the defendants under the agreement.  Defendants respond with a counterclaim alleging in essence that they did not receive the entirety of the fuel for which they had been billed as a result of plaintiff's fraud.  Defendants' counterclaim arises out of the same contract upon which plaintiff has sued and thus the allegations contained in the counterclaim, while not labeled as such, are in the nature of recoupment.

Insofar as the counterclaim asserts the defense of recoupment, it is not barred by the limitations provision and may be pursued; however, to the extent the defendants' counterclaim seeks affirmative relief the claim is not in the nature of a recoupment and is barred under the limitation provision.  See Federal Deposit Insurance Corporation v. Palermo, 815 F.2d 1329, 1341 (10th Cir. 1987) (applying Oklahoma law and holding that defendant could pursue an untimely fraud claim "only as a set-off or counterclaim in the nature of recoupment, not as a claim for

affirmative relief").

    B.   <u>Defendants' Fraud Allegations</u>

Having found that defendants may pursue their fraud allegations under a recoupment defense, the court next turns to the issue of whether defendants' allegations of fraud have been adequately pled.  Under the Federal Rules of Civil Procedure "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Wright & Miller, Federal Practice & Procedure § 1297 at 590 (2d ed. 1990)).

A review of defendants' fraud allegation reveals it was not pled with particularity.  Defendants do not assert which invoices or billing documents were fraudulent nor do defendants provide the dates on which the alleged fraud occurred.

This shortcoming, however, does not warrant dismissal

of defendants' fraud allegations.  Our court of appeals has cautioned that a district court should hesitate to dismiss a complaint if the court is "satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."  Harrison, 176 F.3d at 784.

Applying this guidance, a review of the counterclaim reveals the gravamen of defendants' fraud allegations is that plaintiff intentionally misrepresented the amount of fuel that it delivered to the defendants and, as a result, defendants were overcharged.  (Defs.' Counterclaim at ¶¶ 3-5, 8.)  In light of the unambiguous nature of the fraud claim, plaintiff cannot reasonably contend it is unaware of the circumstances for which it will have to prepare a defense at trial.  Additionally, defendants further represent that they have incurred "special damages for overcharges and underdeliveries of at least $72,066.22."  (Defs.' Counterclaim at ¶ 7.)  This specific special damages figure, calculated out to the penny, strongly suggests that defendants have substantial prediscovery evidence of the facts which form the basis of their fraud claim.

Inasmuch as plaintiff is aware of the particular

circumstances for which it will have to prepare a defense and inasmuch further as it appears defendants have substantial prediscovery evidence of the facts which support their claim of fraud, dismissal is not the appropriate remedy for defendants' failure to plead their fraud claim with particularity and defendants are granted leave to amend their allegations of fraud.

As a final matter, plaintiff's motion to dismiss, while not granted in its entirety, has merit and, thus, the court declines to grant defendants' request for attorney fees.

## IV.

It is, therefore, ORDERED that

(1) plaintiff's motion to dismiss defendants' counterclaim, viewed by the court as a motion for summary judgment, be, and it hereby is, granted to the limited extent defendants' counterclaim seeks affirmative relief and is denied in all other respects;

(2) defendants be, and they hereby are, directed to file an amended counterclaim within 20 days of the entry of this order which more fully sets forth their allegations of fraud and complies with the particularity requirement of Federal Rule of

Civil Procedure 9(b); and

      (3) defendants' request for attorney fees be, and it hereby is, denied.

      The Clerk is directed to forward a copy of this memorandum opinion and order to all counsel of record.

      DATED: July 27, 2006

      _____
      John T. Copenhaver, Jr.
      United States District Judge